# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **DERRICK GATES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:18-cv-00483** |
| | ) | **Judge Trauger** |
| **TONY PARKER, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

The plaintiff, Derrick Gates, is an inmate at the Turney Center Industrial Complex in Only,

Tennessee. Proceeding *pro se*, the plaintiff has filed an original and amended complaint under 42

U.S.C. § 1983. (Doc. Nos. 1 & 4.) He has also filed original and amended applications for leave

to proceed *in forma pauperis* (IFP). (Doc. Nos. 2, 8, 10.)

The case is before the court for a ruling on the amended IFP application and for an initial

review pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(e)(2) and 1915A,

and 42 U.S.C. § 1997e.

## I.      Application to Proceed IFP

Under the PLRA, 28 U.S.C. § 1915(a), a prisoner bringing a civil action may apply for

permission to file suit without prepaying the filing fee of $350.00 required by 28 U.S.C. § 1914(a).

Because it is apparent from the plaintiff's IFP application that he lacks the funds to pay the entire

filing fee in advance, his application (Doc. No. 10) is **GRANTED**.

Pursuant to 28 U.S.C. §§ 1915(b) and 1914(a), the plaintiff is nonetheless assessed the

$350.00 civil filing fee. The warden of the facility in which the plaintiff is currently housed, as

custodian of the plaintiff's trust account, is **DIRECTED** to submit to the Clerk of Court, as an

initial payment, the greater of: (a) 20% of the average monthly deposits to the plaintiff's credit at the jail; or (b) 20% of the average monthly balance to the plaintiff's credit for the six-month period immediately preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of the plaintiff's preceding monthly income (or income credited to the plaintiff for the preceding month), but only when the balance in his account exceeds $10.00. 28 U.S.C. § 1915(b)(2). Payments shall continue until the $350.00 filing fee has been paid in full to the Clerk of Court. 28 U.S.C. § 1915(b)(3).

The Clerk of Court **MUST** send a copy of this order to the warden of the Turney Center Industrial Complex to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If the plaintiff is transferred from his present place of confinement, the custodian must ensure that a copy of this order follows the plaintiff to his new place of confinement, for continued compliance with the order. All payments made pursuant to this order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 801 Broadway, Nashville, TN 37203.

## II.     Initial Review of the Complaint

### A.     PLRA Screening Standard

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any IFP complaint that is facially frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. Similarly, § 1915A provides that the court shall conduct an initial review of any prisoner complaint against a governmental entity, officer, or employee, and shall dismiss the complaint or any portion thereof if the defects listed in § 1915(e)(2)(B) are identified. Under both statutes, this initial review of whether the complaint states a claim upon which relief may be granted asks whether it contains "sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Applying this standard, the court must view the complaint in the light most favorable to the plaintiff and, again, must take all well-pleaded factual allegations as true. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). Furthermore, pro se pleadings must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, pro se litigants are not exempt from the requirements of the Federal Rules of Civil Procedure, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989), nor can the court "create a claim which [a plaintiff] has not spelled out in his pleading." *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)).

**B.      Section 1983 Standard**

The plaintiff seeks to vindicate alleged violations of his federal constitutional rights under 42 U.S.C. § 1983. Section 1983 creates a cause of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a § 1983 claim, the plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution or laws of the United States, and (2) that the deprivation was caused

by a person acting under color of state law. *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

### C. Allegations and Claims

In his amended complaint,[1] the plaintiff alleges that on September 6, 2017, he was brutally attacked by two members of a Security Threat Group in Unit 4, A Pod, on the compound at West Tennessee State Penitentiary, Site 2. (Doc. No. 4 at 3–4.) He was walking from the counselor's office when one of these gang members made contact with the plaintiff. (*Id.* at 4.) When the plaintiff told the other inmate that "excuse me would be the appropriate thing to say," the inmate punched the plaintiff in the face and head. (*Id.*) The plaintiff was then stabbed in the back 4 or 5 times by the second inmate with a homemade knife that was about 8 to 10 inches long. (*Id.*) The plaintiff called for help after this attack, but had to crawl to the counselor's office where he found the correctional officer on duty, Officer Taylor, sitting down and conversing with the counselor instead of "paying attention to activities in the Pod." (*Id.*)

The plaintiff appears to allege that Officer Taylor did not adhere to the "tier management" requirement of Tennessee Department of Correction (TDOC) policy, resulting in the entire pod, rather than only one of the two tiers, being "out on their assigned tier" at the time of the assault. (*Id.*) He alleges that he does not know the names of the inmates who assaulted him, but he does know that the inmate who stabbed him lived on the bottom tier of the pod. (*Id.* at 4–5.) The plaintiff further alleges that this inmate had been confined to segregation on September 2, 2017 for possession of a deadly weapon and had been released back into the general population on September 5, 2017, one day before he stabbed the plaintiff. (*Id.* at 7.) The plaintiff alleges that

---

[1] The plaintiff was entitled to amend his complaint once as a matter of course. Fed. R. Civ. P. 15(a)(1).

Warden Jonathan Lebo should have followed TDOC policy and placed his assailant, a Security Threat Group member, in administrative segregation after his stint in disciplinary segregation, instead of returning him to the general population. (*Id.* at 7–8.)

The plaintiff claims that Officer Taylor, Warden Lebo, Associate Warden Johnny Fitz, and TDOC Commissioner Tony Parker knew from "past and present history that housing non gang member(s) inmates with gang member inmates creates a substantial risk o[f] serious harm or death to the plaintiff." (*Id.* at 7; *see id.* at 6, 8–9.) He claims that Officer Taylor failed to protect him from imminent harm and displayed reckless disregard, deliberate indifference, and gross negligence by fraternizing with another employee rather than "being on post and making her security rounds as post orders instruct every 15 minutes." (*Id.* at 6.) He claims that defendants Lebo, Fitz, and Parker failed to protect him and demonstrated deliberate indifference to his safety by housing him with gang-affiliated inmates, "disregard[ing] this potential hostile environment that would become directly effective to the plaintiff Gates by housing him amongst" such inmates. (*Id.* at 9; *see id.* at 7–9.) The plaintiff claims that this housing situation, the failure to observe tier management requirements, and the release of his assailant from disciplinary segregation back into the general population were all in violation of specified TDOC policies and procedures.

The plaintiff sues all defendants in their individual and official capacities. (*Id.* at 3.) As relief, the plaintiff seeks $450,000.00 in compensatory damages and $650,000.00 in punitive damages. (*Id.* at 10.)

### D.    Analysis

As an initial matter, the plaintiff's official-capacity claims must be dismissed. The defendants are all employees of the State of Tennessee. A suit against a state employee in his or her official capacity is no different than a suit against the state itself. *Will v. Michigan Dep't of*

*State Police*, 491 U.S. 58, 71 (1989) (citing, e.g., *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)). The Eleventh Amendment prohibits suits against a state in federal court. *Kentucky*, 473 U.S. 159; *Pennhurst State Schl. & Hosp. v. Halderman*, 465 U.S. 89, 98–100 (1984). Furthermore, state "officials acting in their official capacities are [not] 'persons' under § 1983." *Will*, 491 U.S. at 71. Any official-capacity claims against these defendants are therefore barred by the Eleventh Amendment and outside the purview of § 1983.

The claims against the defendants in their individual capacities are based on their failure to protect the plaintiff from the harm he suffered at the hands of his fellow inmates. Under the Eighth Amendment, prison officials must "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). Although prison officials have a duty to protect prisoners from assault by other prisoners, the Supreme Court has recognized that jail and prison officials cannot be expected to prevent every assault before it occurs or to stop every assault in progress before injuries are inflicted. Thus, "a prison official may be held liable under the Eighth Amendment . . . only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. That is, the inmate must show both that the risk of harm is sufficiently "serious," an objective inquiry, and that prison officials acted with "deliberate indifference" to inmate health or safety, a subjective inquiry. *Id.* at 837–38; *Helling v. McKinney*, 509 U.S. 25, 32 (1993).

For purposes of this initial screening, the court assumes the objective seriousness of the risk resulting from housing inmates who are known to be affiliated with a gang in the same prison unit with inmates who are not. *See Davis v. Hill*, No. 3:15-cv-00936, 2017 WL 1076477, at *3 (M.D. Tenn. Feb. 21, 2017), *report and recommendation adopted*, 2017 WL 1064151 (M.D. Tenn.

Mar. 21, 2017). However, the plaintiff must also satisfy the subjective component of this claim. He attempts to do so by alleging that the defendants knew of a substantial risk of serious harm or death to the plaintiff based on "past and present history." (Doc. No. 4 at 6, 7, 8, 9.) This allegation is entirely conclusory and fails to plausibly suggest that any defendant was "deliberately indifferent to a specific, known risk" to inmate safety. *Gant v. Campbell*, 4 F. App'x 254, 256 (6th Cir. 2001).

In *Gant*, the Sixth Circuit addressed an inmate's failure-to-protect claim arising from an attack by gang members after they tricked a corrections officer into leaving his post. Although the inmate had allegedly "expressed a general concern" that "he would be in grave danger of attack by gang members because his brother had been attacked," the Sixth Circuit affirmed the dismissal of his claim at the initial screening stage because he did not allege that the defendants knew of any particular threats to his safety, or of any particular gang members whom he feared. *Id.* The court further found that "[t]he officer's negligence in being tricked out of place does not support an Eighth Amendment claim." *Id.*

Similarly, the plaintiff in the instant case has alleged that the defendants knew of the risk of violence inherent in housing gang-affiliated inmates in the same unit with inmates who are not affiliated with a gang, but he does not allege that the inmates who attacked him were known by any defendant to pose a particular risk of harm to the plaintiff. While the failure to allege that the defendants disregarded a risk specific to him will not necessarily defeat the plaintiff's deliberate indifference claim, in the absence of such an allegation, his complaint must plausibly support their disregard of either a pervasive risk of harm or a risk of harm to an identifiable group of which the plaintiff is a member. *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 815 (6th Cir. 1996).

However, the plaintiff does not allege that violence between gang-affiliated inmates and unaffiliated inmates was pervasive in his unit, that he had previously been targeted by gang

members, or that the incident of violence was anything other than a random occurrence. In fact, in the grievance that the plaintiff attached to both his original and amended complaints,[2] he stated that he "had no problem with these dudes until this incident" and clarified that "[t]his is an isolated incident[;] I don't seek protective custody." (Doc. No. 1 at 12; Doc. No. 4 at 18.) He further alleges that the incident was precipitated by the fact that all 128 inmates in the pod happened to be out on the day in question due to Officer Taylor's negligent failure to observe the tier management policy, which "instructs [that] 64 inmates shall be out on their assigned tier" at one time, except during meal time or gym time. (Doc. No. 4 at 5–6.) The plaintiff claims that Officer Taylor's negligence exposed him to a substantial risk of harm because one official could not effectively monitor 128 inmates. (*Id.* at 4–5.) However, he cannot demonstrate that the risk of harm was pervasive based on a single instance of improper tier management. Nor can he plausibly allege deliberate indifference based on the defendants' general knowledge that violence could result from housing gang-affiliated inmates in the same unit as unaffiliated inmates.

Specifically with regard to his claim based on Officer Taylor's temporary absence from her duty station, the plaintiff has failed to allege that Taylor "had knowledge from which she could infer that [he] faced a 'substantial risk of serious harm at the hands of gang members if she left her duty station, that she did in fact draw that inference, and that she nonetheless acted with deliberate indifference to [his] safety." *Davis*, 2017 WL 1076477, at *3. Rather, he accuses Officer Taylor of "negligence and poor performance of her duty" (Doc. No. 4 at 5), neither of which supports an Eighth Amendment claim. *Gant*, 4 F. App'x at 256 (citing *Farmer*, 511 U.S. at 835–36; *Gibson v.*

---

[2] The court may consider these attachments to the complaint in performing the screening required by the PLRA. *Powell v. Woodard*, No. 17-6212, 2018 WL 5098824, at *2 (6th Cir. May 21, 2018) (citing, e.g., *Arauz v. Bell*, 307 F. App'x 923, 925 n.1 (6th Cir. 2009) ("We are also permitted to consider materials attached to the complaint, and we will reference exhibits that Arauz attached to his complaint when these attachments clarify matters.")).

*Foltz*, 963 F.2d 851, 853–54 (6th Cir. 1992)). Therefore, the plaintiff fails to state a plausible § 1983 claim against Officer Taylor, or against any other defendant for failure to properly supervise Officer Taylor. *See Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (holding that supervisory liability cannot be established under § 1983 without implicit authorization, approval, or knowing acquiescence in unconstitutional conduct).

The plaintiff also alleges that Commissioner Parker, Warden Lebo, and Associate Warden Fitz were deliberately indifferent to his safety when, in violation of TDOC policy, they allowed the housing of gang-affiliated inmates in the same unit with other inmates. He further alleges that Warden Lebo was deliberately indifferent to the safety of inmates and staff when he failed to follow TDOC policies 404.10, 506.14, and 506.01, concerning placement of his assailant in administrative segregation after his 3-day confinement to disciplinary segregation. (Doc. No. 4 at 7–8.) Finally, the plaintiff broadly alleges that Parker, Lebo, and Fitz are "legally responsible" for the protection of all inmates in their custody and for supervising the administration of applicable TDOC policies, the failure of which led to the plaintiff's injuries. (*Id.* at 2–3.)

However, alleged violations of TDOC policies are not actionable under § 1983, which, on its face, applies only to deprivations of constitutional or other federal rights. *Groomes v. Parker*, No. 08-2028-AN/P, 2008 WL 4057763, at *6 (W.D. Tenn. Aug. 26, 2008) (citing *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49 (1999)). Moreover, TDOC policy does not create any constitutionally protected interest or right. *Id.* (citing cases). Therefore, the plaintiff fails to state a plausible Eighth Amendment claim based on any defendant's failure to follow, or properly supervise the administration of, TDOC policy. *See Dulworth v. Lindamood*, No. 1:18-cv-00036, 2018 WL 4467038, at *4 (M.D. Tenn. Sept. 18, 2018) (dismissing claim that warden's practice of housing mentally ill inmates with non-mentally ill inmates violates TDOC policies).

In short, even if the alleged variance from certain policies allowed for the encounter between the plaintiff and his assailants on the day he was injured, his allegations are not sufficient to state a colorable claim that any defendant knew of a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 847. Accordingly, this action must be dismissed.

## III.    Conclusion

In light of the foregoing, the plaintiff's application to proceed IFP (Doc. No. 10) is **GRANTED**, and the $350.00 filing fee is **ASSESSED** in accordance with this order. This action is hereby **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim upon which relief can be granted.

The entry of this order shall constitute the final judgment in this action pursuant to Federal Rule of Civil Procedure 58.

It is so **ORDERED**.

ENTER this 22nd day of February 2019.

_____

Aleta A. Trauger
United States District Judge